## Massie v. Commonwealth.

January 14, 1949.

Diederich & Lycan and Baxter Arnett for appellant.

A. E. Funk, Attorney General, Armand Angelucci, Assistant Attorney General, and Roy Wilhoit for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Gordon Massie, was indicted by the grand jury of Boyd County charged with "unlawfully and feloniously, for compensation, percentage and commission setting up, carrying on, managing, operating and conducting a game known as poker whereby money and other things of value were then and there won and lost," a crime denounced by KRS 436.230, subsections 1 and 2. At his trial he was convicted and given the minimum punishment of a fine of $500 and confinement in the penitentiary for one year.

In his motion for a new trial he complained of only three alleged errors, (1) that the verdict was flagrantly against the evidence, (2) error of the court prejudicial to his substantial rights, in admitting evidence in chief by the Commonwealth as to his bad reputation, and (3) error of the court in overruling his motion for a peremptory instruction of acquittal. Grounds (1) and (3) are each directed to the sufficiency of the evidence to sustain his conviction and they will be considered and determined together.

A search warrant was obtained to search the premises described in it which is located within the city of Ashland. The chief of police, one Browning, and a number of deputy policemen executed the warrant, and they found on the second floor of the building authorized to be searched two adjoining rooms, in one of which was found a considerable quantity of alcoholic liquor and in the other a game of poker being played with some eight participants in the game.

Through an opening into that room the policemen, who entered the building from different directions, saw the game in operation, one of the players being appellant. He had an empty cigar box in front of him, but not containing any part of his stake with which he was playing and betting. They also saw him take from the

accumulated pot on the table, constituting the amount to be won by the winner, and put the amount taken into the cigar box, all of which defendant admitted in giving his testimony. He admitted that he was what might be termed a professional gambler at playing poker. He also testified that he did not know who was running the game, although he did give the names of the persons in charge of and operating the business conducted in the room in which the contraband liquor was found, but stated that neither of them operated the poker game in the adjoining room. Later he stated that "There wasn't nobody running the poker game." He likewise testified that he had contracted with the operators of the room in which the liquor was found to buy that business and to take possession the following Monday.

In explanation of his "pinching" or "cutting" the pot and placing the amount so taken into the cigar box he stated: "The only thing was when I would put in $2.25 and would put down $3.00 I would reach in and get out 75c. That is what you call calling a bet." He was then asked and answered:

"Q. Would you say on that or any other occasion that you were in control of that business? A. On Tuesday night I would, but on that night I would not.

"Q. What does Tuesday night have reference to? A. That is the night they raided the place for beer and whiskey."

One of the policemen said to him: "Gordon, I didn't know who was operating here," to which he answered, according to the witness, that he (appellant) "just took it over in the last week or so." Witness then stated that appellant admitted that he was operating the game. On cross examination the witness was asked by defending counsel, Mr. Wilhoit, "Now, when he said he had just taken it over did he say the gambling, or the beer and whiskey place?" to which witness answered, "He said he had just taken the place over." Witness was then asked if he knew the reputation of appellant both as a poker player and setting up and operating poker games which he said was bad. Other policemen present corroborated substantially the testimony of that witness.

It will therefore be seen that appellant admitted

practically everything that the prosecuting witness stated except that he was at that time managing the game, and that it had no manager or operator, thus leaving the impression that no one had equipped the quarters in which the game was being played with the requisite chairs, chips, tables, cards and other usual requisites for the operation of a poker game, a most preposterous contention. It is therefore manifest that the verdict was not flagrantly against the evidence, and also that the court did not err in refusing to direct appellant's acquittal.

We are not convinced that the introduction of proof of appellant's reputation before he testified was erroneous, but the question need not be determined in this case, since as we have hereinbefore pointed out that he not only admitted the truth of that reputation, as testified to by the witness, but likewise admitted that his reputation so proven was true, and like ''Ole Man River'' he neither ''planted taters'' nor ''growed cotton,'' but just kept ''rolling along'' in his determination to earn his living by getting something for nothing.

Wherefore, the judgment is affirmed.